## NATHAN vs. GARDERE.

### APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

Where the vendor expressly renounces his privilege and mortgage in the act of sale, and takes notes for the price of the thing sold, neither him, nor those subrogated to his rights against the common debtor, can exercise any privilege or mortgage in case of non-payment of the notes.

Where a partnership purchases a number of slaves, and one partner gives his notes to the vendor of the slaves for his share of the price, this is not a partnership, but a private debt. The endorser who pays has no claim against the partnership.

The plaintiff shows that a short time before the 17th day of May, 1832, he formed a partnership with M. Duralde, J. B. Perrault and Livaudais, Charbonnet & Co., and that it became necessary to purchase slaves to carry on their partnership business. At the above date the partnership purchased thirty-seven slaves, each partner giving his own notes for his share of the price. That M. Duralde gave his three promissory notes of two thousand five hundred dollars each, payable in one, two, and three years, to the vendor of said slaves, which notes were endorsed by the petitioner. He further shows, that in 1834-5, the two last notes became due,

and were paid and taken up by him, (the said Duralde having become insolvent,) and that he is subrogated of right and by public act, to the rights of the vendor against the debtor.    The plaintiff also alleges, that M. Duralde has made a *concordat* and assignment to his creditors, of his property, and that among other things, thirteen of the said slaves so purchased as before stated, were surrendered up to F. Gardére, Esq., agent or assignee for the creditors, and have been by him sold, and the proceeds yet remaining in his hands.    That by virtue of the payment of said two notes of two thousand five hundred dollars each, as endorser, being so much advanced to the partnership, and by virtue of the subrogation of your petitioner to the rights and privileges of the vendor of said slaves, he is entitled to be paid by preference on his privilege and mortgage, out of the proceeds of said slaves.    He prays that the proceeds, either in cash or in notes, of the sale of said slaves, be sequestered, and that he have judgment to be paid accordingly.

The defendant pleaded a general denial.    In the act of sale of these slaves to the company, on receiving the endorsed notes of each of the partners for his share of the price, to wit: seven thousand five hundred dollars, the vendor renounced the privileges and mortgages he might have therein, to the purchasers.

The district judge gave judgment for the defendant, and dissolved the sequestration of the funds, with costs.    The plaintiff appealed.

*Conrad,* for the plaintiff.

1. The slaves, or the proceeds of which the plaintiff claims a privilege, were purchased (so far as regards the interest of Duralde therein,) with the funds of the plaintiff.    The partnership was enriched by means of this purchase, and he is, therefore, a creditor thereof to the amount advanced by him for this purpose.    If so, he certainly has a preference on their price, over the private creditors of the partners.    *Louisiana Code, articles* 2794, 2835.  5 *Martin, N. S.,* 6257.  2 *Louisiana Reports,* 112.

NATHAN
*vs.*
GADERE.

2. The principles which govern partitions between co-heirs apply equally to partitions between other co-proprietors. *Louisiana Code, article* 1304. Now, according to those principles all sums advanced by one co-proprietor for the amount of debts or useful expenses, is privileged on the property owned in common. *Louisiana Code, article* 1272.

*De Armas, contra.*

*Bullard, J.,* delivered the opinion of the court.

If the plaintiff have a privilege to be paid the amount of his claim out of the price of the slaves mentioned in the petition, it must result either from a legal subrogation to the rights of the vendor, he having paid the price as endorser of Duralde, or from his having paid more than his share of the price of the slaves, as a partner in the association of Dugué, & Co., by which he became a creditor of that firm, and is first to be paid out of its property. Both these grounds are asserted by the plaintiff in his petition and supplemental petition. We proceed to examine his pretensions in the order in which they have been presented, premising that those pretensions are to be considered in reference to third persons, it being admitted that the defendant represents the mass of the creditors of Duralde.

I. Thirty-seven slaves were put into the concern and purchased at the same time from the same person, each of four partners giving his notes for his share of the price. Duralde's share was seven thousand five hundred dollars, for which he gave three notes, endorsed by the plaintiff, of two thousand five hundred dollars each. The two last were protested and taken up by the plaintiff, as endorser. The plaintiff having an interest in paying, on making that payment was legally subrogated in whatever privileges or mortgages the vendor may have had. But in the act of sale signed by all parties concerned, the vendor expressly renounced the privilege and mortgage which would otherwise have resulted from the sale. It is clear, therefore, that the plaintiff acquired no privilege or mortgage by subrogation.

Where the vendor expressly renounces his privilege and mortgage in the act of sale, and takes notes for the price of the thing sold, neither him, nor those subrogated to his rights against the common debtor, can exercise any privilege or mortgage in case of non-payment of the notes.

II. The thirty-seven slaves thus purchased became the joint property of the partners in the Barrataria Association; or let it be conceded for the sake of the argument, that they became partnership property. Was the price due by Duralde for his share of the slaves a partnership debt? Each partner, it would appear, was bound by agreement to bring into the concern, the proportion of thirty-seven slaves. This was done, but in purchasing these slaves from a third person each partner engaged to pay only his part of the price. He had complied with his obligation to the concern, by furnishing his share of the slaves. We cannot perceive how the price to be paid by any one partner for his share of the stock in trade, became a debt due by the partnership. It will not, surely, be contended, that either of the other partners is liable towards the present plaintiff for any part of the money paid by him, as surety or endorser of Duralde. Suppose, instead of purchasing from the same person each an undivided interest in the slaves, the parties had agreed to bring in each a certain number of slaves, and that Duralde had given one of his partners as surety towards a third person for the payment of the price of his proportional number of slaves, and that partner had been compelled to pay the price, in what sense of the word could that be looked upon as a partnership debt? Or what recourse could the partner who had paid have exercised against the other partners?

But, however, that may have been originally as between the partners themselves, it is shown that the slaves in question have been separated from the other property of the concern, and assigned to Duralde, as his share, with the consent of the plaintiff. When they were sold by the defendant they had ceased to be partnership property, having been withdrawn from the concern by Duralde. After the plaintiff had taken up the first note as endorser, to wit: on the 11th December, 1834, by act before a notary, he sold to Duralde, all his interest in the slaves in question, or a part of them, for nine hundred dollars paid in hand. In the act he acknowledges that they had been withdrawn by Duralde, and conveys to him all his title as a co-proprietor.

Where a partnership purchases a number of slaves, and one partner gives his notes to the vendor of the slaves for his share of the price, this is not a partnership but a private debt. The endorser who pays has no claim against the partnership.

34

EASTERN DIST.    We, therefore, concur with the court below, that the
*June, 1837.*    plaintiff has failed to show any privilege, as alleged by him.

WHITNEY ET UX.
*vs.*
O'BEARNE ET AL.    It is, therefore, ordered, adjudged and decreed, that the
judgment of the District Court be affirmed, with costs.